UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

ZJBV Properties, LLC

    v.                                                   Civil No. 1:21-cv-01070-JL
                                                          Opinion No. 2023 DNH 071

Mammoth Tech, Inc.

## MEMORANDUM ORDER

In this commercial landlord-tenant dispute, the plaintiff-landlord ZJBV Properties, LLC's motion for summary judgment hinges on whether the court can rule, based on the present factual record, that ZJBV did not constructively evict the defendant-tenant Mammoth Tech, Inc. If the court rules in its favor, ZJBV contends that there is no dispute that Mammoth has breached the parties' lease by failing to pay rent and summary judgment should enter for ZJBV on its sole breach of contract claim.

This court has jurisdiction over ZJBV's claim under 28 U.S.C. § 1332 (diversity) because the parties are citizens of different states and the amount in controversy exceeds $75,000. After considering the parties' written submissions and hearing oral argument, the court denies the motion because genuine disputes of material fact preclude the court from ruling that Mammoth's constructive eviction defense fails as a matter of law.

**I.    Applicable legal standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if it could reasonably be resolved

in either party's favor at trial by a rational fact finder, and "material" if it could sway the outcome under applicable law.  Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010).  In analyzing a summary judgment motion, the court "views all facts and draws all reasonable inferences in the light most favorable to the non-moving party."  Id.  Where "the moving party avers an absence of evidence to support the non-moving party's case, the non-moving party must offer definite, competent evidence to rebut the motion."  Meuser v. Fed. Express Corp., 564 F.3d 507, 515 (1st Cir. 2009).  In other words, the non-moving party "must proffer admissible evidence that could be accepted by a rational trier of fact as sufficient to establish the necessary proposition."  Gomez-Gonzalez v. Rural Opportunities, Inc., 626 F.3d 654, 662 n.3 (1st Cir. 2010).  "[C]onclusory allegations, improbable inferences, or unsupported speculation" will not suffice to defeat a properly supported summary judgment motion.  Meuser, 564 F.3d at 515 (quotation omitted).

## II.     Background

The following facts are undisputed, unless otherwise noted.  See L.R. 56.1(b) ("All properly supported material facts set forth in the moving party's factual statement may be deemed admitted unless properly opposed by the adverse party.").

In August 2013, ZJBV's predecessor in interest entered into a lease agreement with Mammoth (then known as Credit Adjustments, Inc.) for commercial office space in Manchester, New Hampshire.  The parties subsequently amended the lease to extend the lease term, expand the leased premises, add annual base rent for the expanded spaces, and

include specific performance metrics and repair obligations for the heating, ventilation, and air conditioning system (collectively, the "Lease"). With respect to the HVAC system, the Lease required ZJBV to "make timely repairs, additions and/or replacement of the HVAC units as may be reasonably necessary so that [Mammoth] may maintain temperatures between 65-76 degrees for the entire Leased Premises throughout the Lease Term[.]."[1]

Beginning in May 2019 and through the early winter of 2019, representatives of Mammoth notified representatives of ZJBV about various issues relating to the air conditioning units in the leased premises.[2] In July 2019, Mammoth notified ZJBV that one of Mammoth's employees passed out while working at the leased premises due to the heat and had to be hospitalized, resulting in a complaint with the Occupational Safety and Health Administration. Mammoth continued to notify ZJBV about issues regarding the warm temperature in the leased premises and problems with the air conditioning units in May 2020. In 2019 and 2020, ZJBV responded to some of Mammoth's complaints by sending a maintenance person to assess the situation. Other times, ZJBV retained HVAC contractors to work on the system.

At some point, Mammoth began recording the temperature in the leased premises at various times of the day.[3] In May and June of 2021, Mammoth representatives again

---

[1] See Second Amendment to Lease Agreement (doc. no. 32-4) at 2.

[2] See, e.g., Mammoth communications (doc. nos. 34-5 through 34-30).

[3] See Temperature Logs (doc. nos. 37-39).

wrote to ZJBV representatives to report problems with the air conditioning system. Additionally, over the course of a week in June 2021, Mammoth twice reported to ZJBV that parts of the air conditioning system had dropped through holes in the ceiling tiles created by water leaks. ZJBV responded by sending its maintenance person to attempt to diagnose and fix the problem. On August 4, 2021, Mammoth advised ZJBV that it was declaring ZJBV in breach of the Lease and terminating rent payments on August 31. Mammoth has not paid rent or other charges to ZJBV pursuant to the Lease since September 1, 2021.

## III. Analysis

ZJBV argues that it is entitled to summary judgment on its single breach of contract claim because the undisputed facts show that Mammoth breached the rent payment obligations of the lease without legal excuse. See Audette v. Cummings, 165 N.H. 763, 767 (2013) (a breach of contract "occurs when there is a failure without legal excuse to perform any promise which forms the whole or part of a contract") (quoting Lassonde v. Stanton, 157 N.H. 582, 588 (2008)). Mammoth counters that ZJBV breached the HVAC maintenance and temperature-control provisions of the lease, failed to provide a working air conditioning system throughout the lease term, and thus constructively evicted Mammoth from the property, excusing its requirement to pay rent and occupy the premises. Because genuine disputes of material fact exist as to whether Mammoth had a legal excuse to terminate the lease and stop paying rent, the court cannot grant ZJBV's request for summary judgment of liability on its contract claim.

### A.     Constructive eviction

"A constructive eviction occurs when the landlord so deprives the tenant of the beneficial use or enjoyment of the property that the action is tantamount to depriving the tenant of physical possession." Echo Consulting Servs., Inc. v. N. Conway Bank, 140 N.H. 566, 570 (1995). "The focus of the inquiry" is the "extent of the interference, i.e., whether, in the factual circumstances of the case, the interference is substantial enough that it is tantamount to depriving the tenant of physical possession." Id. As of 1995, when the Supreme Court of New Hampshire issued its opinion in Echo Consulting, the "law regarding this substantiality requirement ha[d] moved . . . 'in the direction of an increase in the landlord's responsibilities.'" Id. (quoting 2 R. Powell, Powell on Real Property ¶ 232[1], at 16B–27 (1994)). Thus, "[e]ven without any affirmative activity on the landlord's part, courts have found a constructive eviction where the landlord fails to perform a lease covenant, fails to perform statutory obligations, or fails to perform a duty that is implied from the circumstances." Id. at 570-571.

A landlord's failure to maintain basic utilities in a leased space may also support a finding of constructive eviction. See, e.g., Shaker & Assocs., Inc. v. Med. Techs. Grp., Ltd., 733 N.E.2d 865, 873 (Ill. App. Ct. 2000) ("[F]ailure to provide heat can constitute the basis for a constructive eviction."); Downtown Realty, Inc. v. 509 Tremont Bldg., Inc., 748 S.W.2d 309, 312 (Tex. App. 1988) (upholding jury's finding that landlord's "failure to repair the heating and air conditioning system constituted a constructive eviction"); Las Vegas Oriental, Inc. v. Sabella's of Nevada, Inc., 97 Nev. 311, 313 (1981)

(affirming trial court's finding "that the failure to provide heating and cooling to the lounge and bar area constituted a constructive eviction").[4]

Whether the interference is substantial enough to effectively deprive the tenant of physical possession is a question of fact. See DiMinico v. Centennial Ests. Coop., Inc., 173 N.H. 150, 156–57 (2020) ("Whether the covenant of quiet enjoyment has been breached in a particular case is a "question[ ] of fact for the trial court to determine in the first instance."); Auto. Supply Co. v. Scene-in-Action Corp., 172 N.E. 35, 38 (Ill. 1930) ("Whether the acts of the landlord amount to a constructive eviction is ordinarily a question of fact for the decision of a jury, depending upon the circumstances of the particular case."). Moreover, "a lessee who claims constructive eviction must abandon the premises within a reasonable time after his reason to do so arises." Thompson v. Poirier, 120 N.H. 584, 587 (1980) (citation omitted). "Whether the lessee vacated within a reasonable time depends on the facts of the particular case." Id. Certain actions or inactions, however, may "support a finding of constructive eviction as long as [they] continue[]." Id. at 588.

---

[4] The parties appear to agree that New Hampshire law applies to the claim and defenses in this case. The court's research, and the cases cited by the parties in their briefing, nevertheless suggest that the law of constructive eviction is fairly uniform among the states. The court therefore cites non-binding precedent from other jurisdictions.

### B. Application to the tenancy at issue

Applying these principles to this case, the court finds that the summary judgment record reveals genuine disputes regarding material factual issues, including but not limited to the following:

- The parties dispute, and the summary judgment record does not resolve, the severity, extent, and effect of the purported issues with the air conditioning system, including but not limited to, whether the temperature in the leased premises fell outside the required range throughout the 2021 cooling season, and whether the system was functioning properly.[5] They further dispute whether other factors caused Mammoth to abandon the leased premises. This goes to whether the air conditioning problems or the overall condition of the leased premises substantially interfered with, or deprived Mammoth of, the use of the leased premises. See Echo Consulting Servs., Inc., 140 N.H. at 571 (affirming trial court's finding that "the interruptions and noise [from construction activities] were intermittent and temporary and did not substantially interfere or deprive Echo of the use of the premises").

---

[5] The parties also appear to dispute what a "complete" set of temperature logs consists of. For example, after receiving the parties' initial summary judgment briefing, the court requested that either side submit a complete set of Mammoth's recorded temperature logs. Mammoth submitted a five-page set of logs from 2021, while ZJBV submitted a longer set of logs for 2020 and 2021. See doc. nos. 37-39. Neither side's submission is BATES numbered or otherwise labeled.

- The parties dispute, and the summary judgment record does not resolve, the effectiveness of ZJBV's attempted repairs to the air conditioning system, including whether ZJBV should have undertaken additional measures to remedy the alleged defects.  This goes to whether the landlord's act or failure to act caused the alleged substantial interference with the tenant's use or enjoyment of the property.  See Shaker & Assocs., Inc., 733 N.E.2d at 873 ("But the fact that some repair efforts were made also does not preclude a claim of constructive eviction."); Applegate v. Inland Real Estate Corp., 441 N.E.2d 379 (Ill. App. Ct. 1982) (constructive eviction found because of roach infestation despite fact that landlord had sent an exterminator).

- The parties dispute, and the summary judgment record does not resolve, whether the problems identified in 2019 or 2020 were fully remedied, whether the same problems recurred in 2021, whether new problems arose in 2021, or whether the same problems continued throughout all three years and were not effectively cured.  This goes to whether the alleged problems with the system in 2019 and 2020 could provide a basis for a constructive eviction in 2021, whether the other issues that occurred during the summer of 2021 (water leaks, items falling through the ceiling panels) provided separate grounds for constructive eviction, or whether Mammoth had any basis in 2021 to claim a constructive eviction.  See Joels v. Nashua-Oxford Bay Assocs. Ltd. Partners, No. 2018-0569, 2019 WL 2743514, at *1 (N.H. June 14, 2019) ("However, the record reflects that the tenant failed to

inform the manager that the problem persisted; instead, he notified her that he was terminating the lease prior to its expiration and contrary to its terms.")

- The parties dispute, and the summary judgment record does not resolve, the extent, timing, and completeness of Mammoth's notice to ZJBV about the problems with the air conditioning system. This goes to the sufficiency and timeliness of Mammoth's notice and ZJBV's knowledge of the alleged deficiencies. See Mason-McDuffie Real Est., Inc. v. Villa Fiore Dev., LLC, 335 P.3d 211, 215 (Nev. 2014) ("[W]e hold that a commercial tenant alleging that it was constructively evicted must show . . . that it provided the landlord notice of and a reasonable opportunity to cure the defect."); Windsor W. Ventures, LLC v. Nevada Urb. Indians, Inc., No. 314CV00539HDMVPC, 2016 WL 475206, at *2 (D. Nev. Feb. 4, 2016) ("Whether defendant vacated the premises in a reasonable period of time and gave plaintiff sufficient notice as required by the law are also questions of fact for the trier of fact. Accordingly, genuine issues of material fact preclude summary judgment on the constructive eviction claim.").

- The parties also dispute, and the summary judgment record does not resolve, whether Mammoth sufficiently notified ZJBV that its prior repair attempts were insufficient. See SGM P'ship v. Nelson, 705 P.2d 49, 52 (Haw. App. Ct. 1985) ("The notice requirement is particularly applicable where, as in this case, "the landlord has undertaken to comply with his covenant and has made repairs.... [I]f the tenant claims that the repairs are not sufficient, it is his duty to give notice thereof to the landlord[.]").

9

- The parties dispute, and the summary judgment record does not resolve, whether Mammoth delayed its abandonment of the property as a result of promises by ZJBV to repair the air conditioning system, the time required to find a new location, or other factors.  This goes to whether Mammoth vacated the property within a reasonable time after the reason to do so arose and whether it waived its right to claim constructive eviction.  See Shaker & Assocs., Inc., 733 N.E.2d at 873 ("Whether the time between the landlord's breach and the tenant's abandonment of the premises is reasonable is generally a question of fact. . . Various factors are considered in determining whether the length of time before the vacation is reasonable, such as reliance upon promises by the landlord to repair and the time required to find a new location.").

- The factual dispute about whether the previously identified problems with the air conditioning system continued or recurred in 2021, or whether new issues arose in 2021, also goes to whether Mammoth vacated the property within a reasonable time and whether the right to claim constructive eviction arose anew in 2021.  See El Paso Nat. Gas Co. v. Kysar Ins. Agency, Inc., 645 P.2d 442, 443 (N.M. 1982) ("A delay in vacating may be justified if the claimant shows either: 1) a reliance on promises by the landlord to correct (a) deficiency or; 2) a reoccurrence of (adverse) conditions.") (quotations omitted); S. Motors, Inc. v. Virginia Nat. Bank, 73 B.R. 261, 264 (W.D. Va. 1987), aff'd sub nom. Mullins v. S. Motors, Inc., 829 F.2d 1120 (4th Cir. 1987) ("Even if a tenant waived its right to claim constructive

eviction by failing to vacate the premises promptly, some courts have held that the right arises again once the problem recurs.").

- The parties dispute, and the summary judgment record does not resolve, whether Mammoth afforded ZJBV an opportunity to remedy the problem in 2021, or whether any such effort to cure would have been fruitful. This too goes to whether Mammoth's delay in abandoning the property might be excused. See Dell'Armi Builders, Inc. v. Johnston, 526 N.E.2d 409, 412 (Ill. App. Ct. 1988) ("A delay in abandoning the premises might be excused by showing a reliance upon promises of the landlord to correct the defects. The tenant may not abandon the premises before allowing the lessor a reasonable opportunity to remedy the problem."); Pickett v. McCarran Mansion, LLC, 133 Nev. 1061 (Nev. App. 2017) ("Further, because this was a commercial lease, appellants were required to provide the landlord with a reasonable opportunity to cure the defect, which necessarily prolongs the permissible time for the tenant to stay on the premises."); Genesco, Inc. v. Monumental Life Ins. Co., 577 F. Supp. 72 (D.S.C. 1983) (excusing four year delay in vacating property where problems continued throughout the entire period and landlord made numerous repair attempts but was unwilling to undertake the major repairs recommended to fix the problem).

## IV. Conclusion

The above-listed disputes preclude summary judgment for ZJBV on its breach of contract claim. The following (mostly) legal issues, raised in the motion and at oral argument, require specific findings by the jury as trier of fact and thus will not be resolved at this procedural juncture:

- Whether ZJBV, through its acts or omissions, interfered with Mammoth's use and enjoyment of the leased premises, or whether other factors caused Mammoth to vacate the premises.

- The substantiality of ZJBV's alleged interference.

- The sufficiency of Mammoth's notice of the alleged defects with the air conditioning system.

- The timeliness of Mammoth's notice.

- Whether ZJBV was entitled to an opportunity to cure and whether Mammoth provided ZJBV with that opportunity.

- Whether Mammoth vacated the leased premises within a reasonable time.

- Whether Mammoth had a justification or excuse for its delay in vacating the premises.

- Whether ZJBV's acts or omissions, while potentially not supporting a constructive eviction defense, support Mammoth's other defenses to ZJBV's breach of lease claim, or provide a potential offset to ZJBV's alleged damages.

ZJBV's motion for summary judgment[6] is accordingly DENIED.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:   June 8, 2023

cc:   Daniel R. Hartley, Esq.
      Hilary Holmes Rheaume, Esq.
      Roy W. Tilsley, Jr., Esq.
      Richard J. Lehmann, Esq.

---

[6] Doc. no. 32.